388 So.2d 354 (1980)
STATE of Florida, Appellant,
v.
Patricia Zoe CAHILL, Appellee.
Nos. 79-1629, 79-1652.
District Court of Appeal of Florida, Second District.
October 1, 1980.
*355 Jim Smith, Atty. Gen., Tallahassee, and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellant.
Jack O. Johnson, Public Defender, Bartow, and P. Douglas Brinkmeyer, Asst. Public Defender, Bartow, for case no. 79-1652.
Robert E. Jagger, Public Defender, Clearwater, and Lynn Tepper Sestak, Asst. Public Defender, New Port Richey, for case no. 79-1629.
RYDER, Judge.
The State files consolidated appeals from two orders suppressing evidence of an admission and certain objects in separate criminal actions before Pinellas and Pasco Circuit Courts.
Clearwater police detectives traced a vehicle, whose driver allegedly sideswiped and twice shot at another motorist days earlier in Clearwater, to its owner the appellee's mother. The testimony elicited during the suppression hearing revealed that the officers drove to the mother's residence in Pasco County. Mrs. Cahill informed the police that she thought appellee had the car at the time of the incident. She directed the Clearwater officers to another Pasco location to find appellee. While driving to the given location, the officers observed the suspect vehicle in motion and followed it to a shopping center parking lot.
Detective Butler testified that he and Officer McMannis, both in plain clothes, drove into the parking lot and parked alongside appellee. McMannis identified himself to appellee after she exited from her car and said they wanted to talk to her. Butler testified that McMannis got out of the police vehicle first and at that point, appellee had her hands in her purse. McMannis took the purse away from her and Butler next saw it on the hood of the police car separated from appellee and out of her reach. Upon being subsequently told the subject of the investigation, appellee admitted that she shot at a car (although only once), and said on further questioning that the gun was in her purse. After searching the purse and finding a gun and bullets, the officers arrested appellee for carrying a concealed firearm. The State later charged appellee with aggravated assault for the earlier Clearwater incident.
Officer McMannis' testimony was substantially similar, except that he denied touching appellee's purse until after her admission and said that she put the purse on the police car hood. No other testimony was presented.
On appellee's motion to suppress the statement, gun and bullets in the carrying a concealed firearm prosecution, the trial judge found that the arrest was illegal because the police were out of the Clearwater jurisdiction. The court noted that since the officers identified themselves as police, all subsequent actions were taken under color of their office. Although reciting detailed facts, the court did not address the conflict between the testimony of the two officers, noting only that the purse was on the car. In a similar subsequent motion in the case involving the original aggravated assault charge, another trial judge granted suppression noting that he was bound by the *356 suppression order entered in the carrying a concealed firearm case.
An admission or search occurring prior to arrest are unaffected by the questioned legality of the later arrest, since the search or the circumstances surrounding the admission must be improper at the time made to support suppression. See Moll v. United States, 413 F.2d 1233 (5th Cir.1969); Wigfall v. State, 323 So.2d 587 (Fla.3d DCA 1975); State v. Jackson, 240 So.2d 88 (Fla.3d DCA 1970). We consider that issue no further. We note that police may legally carry investigation of a crime in their jurisdiction to other areas outside of their jurisdiction. State v. Williams, 366 So.2d 135 (Fla.2d DCA 1979); Parker v. State, 362 So.2d 1033 (Fla. 1st DCA 1978). Thus, the voluntary questioning of appellee was proper. There was no "stop" involved under the facts below, since the officers merely approached appellee and she voluntarily answered their questions. See United States v. Wylie, 186 U.S.App.D.C. 231, 569 F.2d 62 (1977), cert. denied, 435 U.S. 944, 98 S.Ct. 1527, 55 L.Ed.2d 542 (1978); State v. Frost, 374 So.2d 593 (Fla.3d DCA 1979).
The conflicting testimony of subsequent events provides two possible results. If the officer seized the purse immediately, that seizure would in effect be a restraint on liberty, since appellee would not leave without her purse. With no founded suspicion that appellee was engaged in criminal conduct, the restraint was improper and would taint the subsequent admission and evidence. See State v. Frost, supra. However, if Officer McMannis is believed, no improper police conduct occurred to taint the admissions and evidence, and they may be admitted.
If the trial court had made specific or implied factual findings on this issue, we would be bound to apply every inference to uphold its decision. State v. Nova, 361 So.2d 411 (Fla. 1978). No such findings appear. We therefore reverse the order granting suppression in Case No. 79-1629 and remand for reconsideration of the motion to suppress in light of the preceding opinion.
Regarding the subsequent suppression order in the aggravated assault charge, we note that, in some circumstances, the State may be collaterally estopped from rearguing ultimate facts because of the Fifth Amendment bar on double jeopardy. See Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); Murphy v. State, 382 So.2d 1380 (Fla.2d DCA 1980). We need not reach the question of whether the action below requires application of collateral estoppel since the initial order no longer stands. The order entered in Case No. 79-1652 is reversed and the case remanded for further proceedings consistent with this opinion.
REVERSED and REMANDED with instructions.
BOARDMAN, Acting C.J., and CAMPBELL, J., concur.